UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AMANDA BROADHURST, an infant over the age of
fourteen by her mother and natural guardian THERESA
BROADHURST,

                            Plaintiffs,              **OPINION AND ORDER**

- against -

                                            No. 07-CV-9511 (CS)

THE COUNTY OF ROCKLAND, JAMES F. KRALIK,
Sheriff of Rockland County, and Deputy Sheriff
GARRETT CLAPP Badge #364,

                            Defendants.
-------------------------------------------------------------------x

<u>Appearances:</u>

Michael R. Scolnick
Michael R. Scolnick, P.C.
Airmont, New York
*Counsel for Plaintiff*

Eric Dranoff
Saretsky Katz Dranoff & Glass, L.L.P.
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

      Before the Court is Defendants' Motion for Summary Judgment. (Doc. 26.)[1] For the following reasons, the motion is GRANTED.

---

[1] Not only has counsel for Plaintiff filed this case in the full name of his client, a minor at the time of filing, but in responding to this motion, counsel for Plaintiff has publicly filed her psychiatric records on ECF, (Doc. 39 Ex. 6), as well as documents listing personal identifying information of one of the defendants and his ex-wife, (Doc. 39 Ex. 7), in violation of Rule 5.2 of the Federal Rules of Civil Procedure and Rules 21.2–21.4 of the Electronic Case Filing Rules & Instructions for the Southern District of New York, available at http://www.nysd.uscourts.gov/ecf_filing.php. While it is too late to remove his client's name from every document in the case, counsel for Plaintiff is directed to refile motion papers with his client's psychiatric records and any personal identifying information redacted. The Clerk of the Court has sealed Plaintiff's Affirmation in Opposition, (Doc. 39), including the attachments.

**I.     Background**

The following facts are undisputed except where noted. Plaintiff Amanda Broadhurst brings this civil rights action against defendants Deputy Sheriff Garrett Clapp ("Officer Clapp"), Sheriff of Rockland County James F. Kralik ("Sheriff Kralik"), and the County of Rockland ("County") (collectively, "Defendants") based on an incident on October 12, 2006 during which Officer Clapp sprayed Plaintiff in the face with pepper spray (the "Incident"). Against Officer Clapp individually, Plaintiff brings federal claims under 42 U.S.C. § 1983 for violations of her constitutional rights to be free from false arrest and excessive force, and state law claims for assault, battery, and false arrest and imprisonment.[2] Against the County, Plaintiff alleges the same state law causes of action on a theory of *respondeat superior*. Plaintiff alleges against Sheriff Kralik and the County (the "Municipal Defendants") the same Section 1983 claims alleged against Officer Clapp. Finally, against the Municipal Defendants, Plaintiff alleges negligent hiring and retention of Officer Clapp. (Am. Compl. 6–10.)[3]

**A.     Officer Clapp's Employment and Training History**

Officer Clapp was hired by the County on August 10, 1998. (Defs.' 56.1 ¶ 72.)[4] He successfully completed his training as a new recruit and additional in-service trainings in the use of force, including training on the use of pepper spray, (*id.* ¶¶ 73–78; Tarley Aff. Ex. C),[5] the

---

[2]     "Under Section 1983 and New York law, false arrest and false imprisonment claims both require the same showing." *Johnson v. Constantellis*, No. 03-CV-1267, 2005 WL 2291195, at *7 (S.D.N.Y. Aug. 10, 2005) (citing *Shain v. Ellison*, 273 F.3d 56, 67 (2d Cir. 2001)). The only difference, irrelevant in this case, is that not all imprisonments are due to arrest. *See Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 472–73 (1972). Thus, for the purposes of Defendants' motion, I shall refer to "false arrest" only.

[3]     "Am. Compl." refers to Plaintiff's Amended Complaint. (Doc. 12.)

[4]     "Defs.' 56.1" refers to Defendants' Rule 56.1 Statement of Material Facts. (Doc. 34.)

[5]     "Tarley Aff." refers to the Affidavit of Peter Tarley in Support of Defendants' Motion for Summary Judgment. (Doc. 28.)

2

policy and guidelines on the use of which are set forth in the County's comprehensive General Order, dated January 1, 2005, (Defs.' 56.1 ¶ 79). During his employment with the County, he had been investigated for two incidents by the Sheriff's Department. (*Id.* ¶ 80.) One incident involved Officer Clapp's April 22, 2005 off-duty intervention in an altercation in a bar in New City, New York, where he had been drinking. (*Id.* ¶ 81; Pl.'s 56.1 ¶ 82; Dranoff Decl. Ex. H, at 4 ("Police Division Internal Investigation").)[6] Three men threatened another bar patron. (Defs.' 56.1 ¶ 81; Police Division Internal Investigation 4.)[7] Officer Clapp identified himself as a police officer and, in attempting to stop the fight, drew his weapon and repeated an improper racial term that had been directed at him. (Defs.' 56.1 ¶ 81; Pl.'s 56.1 ¶ 81; Police Division Internal Investigation 4.) Defendants claim that Officer Clapp drew his gun because the men threatened to kill him, (Defs.' 56.1 ¶ 81); Plaintiff claims that no other witnesses heard the men threaten to kill Officer Clapp, (Pl.'s 56.1 ¶ 82–82e). The Sheriff's Department found Officer Clapp to have been "in possible violation" of police firearms and use-of-force policies, placed him on administrative leave, and handled the incident administratively, including counseling and additional training. (Defs.' 56.1 ¶ 81; Police Division Internal Investigation 4.) The second incident, on September 12, 2005, involved a claim by Officer Clapp's ex-wife. (Defs.' 56.1 ¶ 80; Dranoff Decl. Ex. G.) Officer Clapp was placed on administrative leave while the allegations were investigated, but he was allowed to return to duty after the Sheriff's Department found the allegations to be baseless. (Defs.' 56.1 ¶ 80.)

---

[6] "Pl.'s 56.1" refers to Plaintiff's Rule 56.1 Statement of Material Facts. (Doc. 41.) Plaintiff failed to comply with my Individual Practices for such submissions. Rule 2(C)(i), Individual Practices of Judge Cathy Seibel (Special Rules for Summary Judgment Motions). Counsel is advised not to make the same error going forward. Further, this Rule 56.1 statement would have been more helpful to the Court if it were clearer and less argumentative.

[7] "Dranoff Decl." refers to the Declaration of Eric Dranoff in Support of Defendants' Motion for Summary Judgment. (Doc. 27.)

B.     **The October 12, 2006 Incident**

Prior to October 12, 2006, Theresa Broadhurst, Plaintiff's mother, and Plaintiff's school district filed a Person in Need of Supervision ("PINS") Petition due to Plaintiff's chronic truancy. (*Id.* ¶ 1; Pl.'s 56.1 ¶ 1.) On October 12, 2006, Plaintiff, 14 years old at the time, and her mother went to the Rockland County Probation Department for an initial meeting with Probation Officer Marianne Kelleher ("Officer Kelleher") concerning the PINS Petition. (Defs.' 56.1 ¶¶ 3, 5.) Officer Clapp was stationed in the lobby of the Probation Department when Plaintiff and her mother arrived. (*Id.* ¶¶ 5–6.)

Officer Kelleher greeted Plaintiff and her mother in the reception area of the building in a pleasant manner and escorted the pair to her office. (Defs.' 56.1 ¶ 10.) In her office, Officer Kelleher attempted to explain to Plaintiff and her mother the nature of the PINS Petition, but was interrupted by Plaintiff who, in a raised voice, stated a number of times that the Petition was "a joke." (*Id.* ¶¶ 11–15.) At this point, Plaintiff was rude, belligerent, and disrespectful towards her mother. (Defs.' 56.1 ¶ 12; Pl.'s. ¶ 12.) Plaintiff refused to comply with Officer Kelleher's requests to cooperate and listen. (Defs.' 56.1 ¶¶ 16–17.) Officer Kelleher consequently directed Plaintiff two or three times to leave the office and wait in the hallway, which Plaintiff ignored. (*Id.* ¶¶ 18–21.) Plaintiff also refused her mother's requests to cooperate with Officer Kelleher. (*Id.* ¶¶ 24–25.) Officer Kelleher remained respectful to Plaintiff, (*id.* ¶ 23), but warned Plaintiff that if she did not leave the office, the Sheriff would be called, (*id.* ¶¶ 20, 28). Because Plaintiff would not leave the office despite repeated requests to do so, Officer Kelleher asked Probation Officer Enrique Pabon ("Officer Pabon") to call for assistance from the Sheriff's Department. (*Id.* ¶¶ 30, 33.)

Officer Clapp, responding to the request for assistance, arrived within a few minutes at Officer Kelleher's office, where Plaintiff sat in a chair. (*Id.* ¶¶ 35–36.) Officer Kelleher told Officer Clapp what had occurred and explained that she wanted Plaintiff escorted to the waiting area. (*Id.* ¶ 37.) The parties disagree as to what happened next.

According to Defendants, Officer Clapp, "[i]n a calm tone, . . . repeatedly directed plaintiff to leave the office with him," and Plaintiff refused each time. (*Id.* ¶¶ 38–41.) Officer Clapp advised Plaintiff that if she did not voluntarily leave with him, she would be placed into custody. (*Id.* ¶ 42.) Plaintiff refused again and remained in her chair. (*Id.* ¶ 43.) Officer Clapp then took out his handcuffs and told Plaintiff she was being taken into custody. (*Id.* ¶ 44.) Plaintiff stood up and Officer Clapp directed her to turn around and put her hands behind her back. (*Id.* ¶ 45.) Plaintiff did not do so, but rather, without speaking, tried to push her way past him. (*Id.* ¶ 46.) Officer Clapp, believing that Plaintiff was trying to escape and that she might harm herself or others, attempted to physically restrain Plaintiff and succeeded in getting one handcuff on her. (*Id.* ¶ 47.) Officer Clapp's account is corroborated by Officer Kelleher, Officer Pabon, and two other probation officers. (Kelleher Aff. 2; Pabon Aff. 2; Del Pilar Aff. 2; Torres Aff. 2).[8]

But according to Plaintiff, immediately after Officer Kelleher explained to Officer Clapp that Plaintiff refused to leave, Officer Clapp threatened Plaintiff by saying, "If you don't leave the office, I'm gonna handcuff you and pepper spray you." (Pl.'s 56.1 ¶ 38.) Plaintiff then stood and attempted to comply, but Officer Clapp stood in front of the doorway, intentionally blocking it and preventing Plaintiff from leaving. (*Id.* ¶¶ 43–44.) As Plaintiff attempted to leave the room,

---

[8] "Kelleher Aff." refers to the Affidavit of Marianne Kelleher, (Doc. 30); "Pabon Aff." refers to the Affidavit of Enrique Pabon, (Doc. 29); "Del Pilar Aff." refers to the Affidavit of Juan Del Pilar, (Doc. 31); "Torres Aff." refers to the Affidavit of Evelyn Torres, (Doc. 32).

Officer Clapp grabbed her around the waist with his left arm and started to handcuff her. (Pl.'s 56.1 ¶ 45.) Plaintiff's mother corroborates this account. (Broadhurst Dep. 42:15–17, 44–45, 51.)

The parties do not dispute that Plaintiff resisted being handcuffed and that she flailed her arms, striking Officer Clapp in the face. (Defs.' 56.1 ¶ 48.) Officer Clapp told Plaintiff to stop resisting, but she continued to flail her arms and scream. (*Id.* ¶ 49.) Though the New York State Training Manual does not require an officer to announce that he will use pepper spray, Officer Clapp repeatedly warned Plaintiff that if she did not calm down, he would have to subdue her with pepper spray. (*Id.* ¶¶ 50–51.) Out in the hallway with the struggling Plaintiff, Officer Clapp sprayed Plaintiff with pepper spray, which immediately caused Plaintiff to stop fighting and fall to the floor. (*Id.* ¶ 55; Pl.'s 56.1 ¶ 55.)

Officer Clapp claims to have sprayed Plaintiff in the face for approximately one second, (Clapp Dep. at 51–52),[9] but Plaintiff claims to have been sprayed on her face, mouth, neck, and chest, (Pl.'s 56.1 ¶ 55; Pl. Dep. at 75),[10] and according to her mother, the spray "just kept going and going," (Broadhurst Dep. at 53).[11] Officer Clapp then placed Plaintiff into custody, handcuffed her, and advised her that she was under arrest for assaulting an officer. (Defs.' 56.1 ¶ 56.) Plaintiff notes, however, that even though Officer Clapp told her that she was under arrest, (Pl.'s 56.1 ¶ 56a), she was "never placed under arrest," (*id.* ¶ 56), and that a supervisor advised Officer Clapp that Plaintiff, as a juvenile, could not be put in a jail or holding cell, (*id.* ¶ 56b).

---

[9] "Clapp Dep." refers to the Examination Before Trial of Officer Clapp. (Dranoff Decl. Ex. C.)

[10] "Pl. Dep." refers to the Examination Before Trial of Amanda Broadhurst. (Dranoff Decl. Ex. B; Affirmation of Michael R. Scolnick in Opposition to Defendant's Motion for Summary Judgment ("Scolnick Aff."), Doc. 39, Ex. 2.)

[11] "Broadhurst Dep." refers to the Examination Before Trial of Theresa Broadhurst. (Dranoff Decl. Ex. A; Scolnick Aff. Ex. 1.)

After being sprayed, Plaintiff complained of pain to her face and irritation to, and the inability to open, her eyes, (Defs.' 56.1 ¶ 57), which are the ordinary and expected effects of pepper spray, (*id.* ¶ 58; Pl.'s 56.1 ¶ 58). Plaintiff's mother decided against sending Plaintiff to see a mental health professional, and instead thought Plaintiff should go to the Nyack Hospital Emergency Room. (Defs.' 56.1 ¶¶ 59–60; Pl.'s 56.1 ¶¶ 59–60.) When the Emergency Medical Technicians ("EMTs") arrived at the Probation Department, Plaintiff complained that her face burned from the pepper spray, but did not complain of difficulty breathing or chest pain. (Defs.' 56.1 ¶ 61.) The EMTs washed off and applied ice packs to Plaintiff's face. (*Id.* ¶ 62.) En route to the hospital, Plaintiff claimed to feel better. (*Id.* ¶ 63.) According to Defendants, the hospital records indicate that Plaintiff experienced "redness to face," "puffy eyes," and a "burning tingling sensation in the chest area," but no difficulty in breathing. (*Id.* ¶ 64.) Plaintiff also notes that the Nyack Hospital documents indicate "bilateral hand bruising, dorsal aspect due to hand cuffs, face and chest erythema, burning to chest and anxiety." (Pl.'s 56.1 ¶ 64.) The hospital records support the contentions of both Plaintiff and Defendants. (*See* Dranoff Decl. Ex. D; Scolnick Aff. Ex. 6D.)

The day after the Incident, Plaintiff saw her pediatrician Dr. Joshua Chesir. (Defs.' 56.1 ¶ 65.) Dr. Chesir reported Plaintiff's physical condition as follows:

> Alert,[] no distress. Head is normal. Ears bilaterally show good light reflex, no redness, no bulging. Tonsils are normal size, no redness, no exudates. No significant adenopathy. Neck is fully supple. Heart exam is normal, rate and rhythm is normal, no murmurs heard. Chest is clear to auscultation bilaterally, no rales or wheeze, no rhonchi, full breath sounds. Abdomen: Positive bowel sounds. No hepatosplenomegaly. No other masses. Soft, non tender. No guarding, no rebound tenderness. Negative psoas and obturator. Mild dermatitis rash on [upper esophageal sphincter]. Tymps are [normal.]
>
>     Reassure!

(Chesir Progress Notes, Dranoff Decl. Ex. F; *see* Defs.' 56.1 ¶ 66.) According to Defendants, Plaintiff received no other medical treatment, mental health treatment, or medications as a result of the Incident. (Defs.' 56.1 ¶ 67.) Plaintiff, however, alleges that she has since received extensive counseling and mental health treatment, been prescribed new medications, and suffered a worsening of her psychological condition, including the development of new symptoms. (Pl.'s 56.1 ¶ 67.) But Plaintiff's medical and psychiatric records, which span the period before and after the Incident, contradict some of her assertions. (Scolnick Aff. Ex. 6G, at 1–2 (evaluation, dated July 31, 2007, describing same symptoms as having developed one and a half to two years earlier and continued).) Further, while Plaintiff was prescribed different medication for a preexisting disorder after the Incident, (*see, e.g.*, Scolnick Aff. Ex. 6G, at 3), she admits that she has never gone to a therapist for treatment as a result of the Incident, (Pl. Dep. 120:22–24).

        **C.**        **Officer Clapp's Bankruptcy Discharge and Subsequent Proceedings**

Plaintiff filed the Complaint in this case on October 18, 2007. (Doc. 1.) On June 27, 2008, Officer Clapp filed a chapter 7 bankruptcy petition. (Bankruptcy Discharge.)[12] Plaintiff's claim had been listed on Officer Clapp's amended bankruptcy schedules. (Scolnick Aff. Ex 12.) On October 29, 2008, the Bankruptcy Court for the Southern District of New York issued an order relieving Officer Clapp of "all dischargeable debts." (Bankruptcy Discharge.) The Bankruptcy Discharge also voided judgments against Officer Clapp and enjoined future actions against him:

> 2. Any judgment not obtained in this court is null and void as to the personal liability of [Officer Clapp] regarding the following:

---

[12] "Bankruptcy Discharge" refers to the Discharge of Debtor Order of Final Decree, No. 08-22899 (Bankr. S.D.N.Y. Oct. 29, 2008). (Dranoff Decl. Ex. I.)

> (a) debts dischargeable under 11 U.S.C. § 523(a);
>
> (b) debts alleged to be excepted from discharge under 11 U.S.C. § 523(a)(2), (4), (6) or (15) unless determined by this court to be nondischargeable;
>
> (c) debts determined by this court to be discharged.
>
> 3. All creditors whose debts are discharged by this order or whose judgments are declared null and void in 2 above, are enjoined from instituting or continuing any action, employing any process or engaging in any act to collect such debts as personal liabilities of [Officer Clapp].

(*Id.*) Plaintiff had taken no action in the Bankruptcy Court to preserve her claim, but on April 6, 2009, after Officer Clapp's discharge, Plaintiff filed a motion in the Bankruptcy Court to reopen Officer Clapp's bankruptcy case to pursue a nondischargeability action against him under Section 523(a)(6) of the Bankruptcy Code for willful injury. (*See* Bankruptcy Order; Bench Ruling 8–9.)[13] The Bankruptcy Court denied Plaintiff's motion, (Bankruptcy Order), because the time period for filing such a motion had passed, (Bench Ruling 10–11).[14]

---

[13]     "Bankruptcy Order" refers to the Order Denying Creditor's Motion to Reopen Debtor's Bankruptcy Case Pursuant to 11 U.S.C. § 350(b) and Fed. R. Bank. P. 5010. (Dranoff Decl. Ex. J.) "Bench Ruling" refers to the transcript of the June 25, 2009 hearing before the Bankruptcy Court. (Scolnick Aff. Ex. 9.)

[14]     According to Section 523(c) of the Bankruptcy Code and Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, "[a] complaint under sections 523(a)(2), (4), (6) and (15) must be filed within 60 days following the creditors' meeting; if not, then debts of those kind are discharged." *In re Fucilo*, No. 00-36261, 2002 WL 1008935, at *7 (Bankr. S.D.N.Y. Jan. 24, 2002) (citing *In re Taibbi*, 213 B.R. 261, 273 (Bankr. E.D.N.Y. 1994)); *see also* 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007(c). "Therefore, if a creditor has any ground to except his debt from discharge under one of those subsections, he must file a timely complaint or forever lose his rights." *In re Fucilo*, 2002 WL 1008935, at *7 (citing *Taibbi*, 213 B.R. at 272–73); *cf. Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (strictly enforcing 30 day deadline under Rule 4003 pertaining to bankruptcy estate trustee's right to object to bankruptcy filer's claimed exemptions).  Plaintiff received the required notice of the creditors' meeting under this Rule, *see* Fed. R. Bankr. P. 3007(c), but did not file a complaint within the 60-day period, (Bench Ruling 10).

## II.   Discussion

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).  Where, as here, an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

For the purposes of this Motion for Summary Judgment, I will assume disputed facts as Plaintiff presents them.

### B. Plaintiff's Section 1983 Claim Against Officer Clapp Individually

Defendants argue that the Bankruptcy Discharge "precludes plaintiffs from pursuing their causes of action against Officer Clapp individually." (Defs.' Mem. 3.)[15] Plaintiff did not appeal and has not otherwise challenged the Bankruptcy Court's denial of her motion to reopen Officer Clapp's bankruptcy case, and disclaims any desire to recover damages from him. Rather, Plaintiff seeks to maintain her claims against Officer Clapp solely to determine his liability in order to recover damages from the County via indemnification. (Pl.'s Opp'n 9–10.)[16] To do so, Plaintiff asks this Court for "a modification" of the Bankruptcy Discharge, "the entry of judgment against [Officer Clapp] (if so determined after trial), and subsequent procedures to

---

[15]   "Defs.' Mem." Memorandum of Law in Support of Defendants' Motion for Summary Judgment. (Doc. 33.)

[16]   "Pl.'s Opp'n" refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. (Doc. 40.)

11

obtain from the County the legally mandated indemnification." (*Id.* at 6–7.) For the reasons below, this Court denies Plaintiff's request and holds that she is barred from maintaining her Section 1983 claim against Officer Clapp.

A bankruptcy discharge bars future actions to collect from a debtor so that the debtor can "have the opportunity to make a financial fresh start." *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) (internal quotation marks omitted); *see also* 11 U.S.C. § 524(a)(2) ("A discharge . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."). Despite this fresh-start policy, the Second Circuit interprets Section 524(e) of the Bankruptcy Code to permit claims against a discharged debtor to determine the debtor's liability so that a plaintiff may recover from the debtor's insurer. *Green*, 956 F.2d at 33–34 (surveying cases); *see also* 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."). But Section 524(e) does not extend to claims against a debtor whose right to indemnification does not arise before the debtor is required to pay. *See Bank of India v. Trendi Sportswear, Inc.*, No. 89-CV-5996, 2002 WL 84631, at *5 (S.D.N.Y. Jan. 18, 2002) ("The principal distinction between [insurer or surety cases like *Green*] and [indemnification cases] is that . . . New York State Law does not permit recovery on an indemnity claim where the party seeking indemnification has not suffered an out of pocket loss."), *aff'd*, 64 F. App'x 827 (2d Cir. 2003); *In re Petition of Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 281 B.R. 200, 210–11 (Bankr. S.D.N.Y. 2002) ("pay first" liability violates the "fresh start" policy of the Bankruptcy Code).

Here, Plaintiff claims that the County is required to indemnify, not insure, Officer Clapp. (Pl.'s Opp'n 6 (citing Laws of Rockland Cnty. § 45-3).)[17] And under New York law, an indemnification claim does not arise until the indemnitee suffers an out-of-pocket loss. *Bank of India*, 2002 WL 84631, at *4–5; *see Hopewell*, 281 B.R. at 210–11; *N. Star Reinsurance Corp. v. Cont'l Ins. Co.*, 624 N.E.2d 647, 653 (N.Y. 1993); *Perno v. For-Med Med. Grp., P.C.*, 673 N.Y.S.2d 849, 851 (N.Y. Sup. Ct. 1998). Further, third parties have no standing to bring indemnification claims, *see Kan v. Port Auth. of N.Y. & N.J.*, 99-CV-10235, 2000 WL 1745051, at *3 (S.D.N.Y. Nov. 28, 2000) ("indemnity contract does not give rise to direct action against indemnitor by non-party to the contract") (internal citation omitted), and while Section 3420 of the New York Insurance Law requires insurance policies or contracts to allow for claims against an insolvent insured, this provision applies only to insurance policies, and is thus inapplicable here, *see* N.Y. Ins. Law § 3420(a)(1). Finally, Plaintiff has not explained what "procedure" she would invoke to obtain indemnification from the County.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's Section 1983 claim against Officer Clapp.

### C. Plaintiff's Section 1983 Claims Against the County and Sheriff Kralik

In the sixth count of the Amended Complaint, Plaintiff alleges that the Municipal Defendants violated Section 1983 in that they "developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons on and about their premises," and that these policies "caused the violation of [Plaintiff's] rights." (Am. Compl.

---

[17] The Rockland County Code § 45-3, available at www.ecode360.com/9663634, provides that: (1) the County will indemnify its employees for judgments, provided that the employee acted in good faith and within the scope of his duties, unless the conduct was the result of intentional wrongdoing or recklessness; and (2) no payment will be made until after a final judgment against the employee is obtained.

¶ 46.)[18] Specifically, Plaintiff alleges that it was the policy of the Municipal Defendants to "improperly and inadequately investigate citizen complaints" against deputies, (*id.* ¶ 47), and "to fail to take the required steps to discipline, train, supervise or otherwise correct the improper, illegal conduct" of deputies, (*id.* ¶ 48), and that they "did not require appropriate in-service training or re-training of deputies who were known to have engaged in misconduct," (*id.* ¶ 49). Defendants contend that a single, isolated incident is not sufficient to establish a claim of inadequate training, (Defs.' Mem. 5, 7), Plaintiff has failed to present the expert testimony necessary to identify a specific deficiency in the County's policy that caused her injury, (*id.* at 6), Officer Clapp, in any case, was properly trained according to the County's policies, (*id.* at 9), and Plaintiff has failed to identify any legitimate "citizen complaints of misconduct" against Officer Clapp, (*id.* at 11). Plaintiff did not address any of these arguments in her opposition brief. Thus, the Court deems her Section 1983 claims against Sheriff Kralik and the County abandoned. *See Parrilla v. City of N.Y.*, No. 09-CV-8314, 2011 WL 611849, at *1 n.4 (S.D.N.Y. Feb. 16, 2011) (plaintiff abandoned Section 1983 claim on summary judgment by failing to oppose defendants' arguments regarding municipal liability); *Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08-CV-8786, 2010 WL 1948322, at *12 (S.D.N.Y. May 10, 2010) ("Plaintiffs [Section 1981] claim . . . must be dismissed as abandoned because Plaintiff failed to address . . . Defendants' argument[s] concerning this claim.") (third and fourth alterations in original)

---

[18]  The Bankruptcy Court held that Officer Clapp's discharge would not bar Plaintiff from maintaining actions directly against the County or Sheriff Kralik. (Scolnick Aff. Ex. 9 at 11–12.) I agree. Section 524, by its own language, indicates that "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt." 11 U.S.C. § 524(e). And while Section 524 may protect Officer Clapp from personal liability on his debts, a discharge in bankruptcy "destroys the remedy but not the indebtedness." *Kesler v. Dep't of Pub. Safety*, 369 U.S. 153, 170 (1962) (internal quotation marks omitted), *overruled in part on other grounds by Swift & Co. v. Wickham*, 382 U.S. 111 (1965) *and Perez v. Campbell*, 402 U.S. 637 (1971). Thus, granting summary judgment for Officer Clapp on the basis of his bankruptcy discharge does not constitute a finding on the merits for Plaintiff's asserted causes of action—it merely destroys Plaintiff's remedy against him.

14

(internal quotation marks omitted); *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (report and recommendation) (collecting cases). In any event, as Defendants argue, the few facts that Plaintiff sets forth are insufficient for a rational jury to find liability on the County's or Sheriff Kralik's part, as Plaintiff offers no evidence either of the inadequacies in the County's training program or how any such inadequacies may have caused the alleged constitutional violations. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (identified deficiency in training must be "closely related to the ultimate injury" for municipal liability to attach); *Wray v. City of N.Y.*, 490 F.3d 189, 196 (2d Cir. 2007) (plaintiff must set forth evidence of specific deficiency in training program, establish that it caused constitutional violation, and show that inadequacy resulted from deliberate indifference); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128–31 (2d Cir. 2004) (same).

Thus, Defendants' Motion for Summary Judgment with respect to Plaintiff's Section 1983 claims against the Municipal Defendants is GRANTED.

### D.     State Law Claims

Because the Court has dismissed all of Plaintiff's federal causes of action, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state claims as set forth in the second, third, fourth, fifth, and seventh counts.  *See* 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

## III.     Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment on Plaintiff's Section 1983 claims—counts one and six—is GRANTED. Plaintiff's state law claims are

16

dismissed without prejudice. The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 26), and close the case.

**SO ORDERED.**

Dated: October 31, 2011
  White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

Case 7:07-cv-09511-CS   Document 42   Filed 10/31/11   Page 16 of 16